**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EL GALLO GIRO CORP., <br><br>                 Plaintiff, <br>    v. <br> HOUSTON CASUALTY CO., and; PROFESSIONAL INDEMNITY AGENCY, Inc. d/b/a "HCC SPECIALTY," <br><br>                Defendants. | Case No. 2:12-cv-05422-ODW(JCx) <br><br> **ORDER GRANTING DEFENDANTS' CONVERTED MOTION FOR SUMMARY JUDGMENT [14, 34] AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DUTY TO DEFEND [15]** |

This case concerns a checkbox. Yet in an insurance application, a checkbox may be crucial in determining whether an insured is either entitled to a defense from its insurer or is out of luck because it did not disclose seemingly superfluous information.

The parties here bring two motions before the Court: the first motion is Defendants Houston Casualty Co. and Professional Indemnity Agency, Inc.'s ("PIA") Motion to Dismiss, which the Court converted to a motion for summary judgment; the second is Plaintiff El Gallo Giro Corp.'s Motion for Partial Summary Judgment on the Duty to Defend.[1] (ECF Nos. 14, 15, 34.) For the reasons explained below, the Court **GRANTS** Houston Casualty and PIA's Motion and **DENIES** El Gallo Giro's Motion.

---

[1] Having considered the papers filed in support of and in opposition to these Motions, the Court deems the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

# I.   BACKGROUND

El Gallo Giro is a California corporation that operates ten restaurants in Los Angeles County.  (Mot. Partial Summ. J. 2.)  Houston Casualty is a foreign insurance company that issued the insurance policy at the heart of this lawsuit.  (FAC ¶ 2.)  Professional Indemnity Agency is a Texas corporation and the Director of Claims that processes insurance claims for Houston Casualty.  (*Id.* ¶ 3.)

El Gallo Giro submitted an application dated February 3, 2011, for an Employment Practices Liability Insurance policy to Houston Casualty.  (*Id.* Ex. A 28–34.)  After receiving the application, Houston Casualty issued a policy to El Gallo Giro.  (FAC ¶ 6.)  The policy covered El Gallo Giro from March 28, 2011, to March 28, 2012.  (*Id.*)  The policy requires Houston Casualty to defend El Gallo Giro against any claim asserted against it and reported during the policy period that raises the possibility of coverage.  (*Id.* ¶ 7.)  A claim is defined under the policy as a written demand received by the insured alleging damages or the filing of a suit.  (*Id.*)  The policy also requires Houston Casualty to indemnify El Gallo Giro from any damages arising from a claim, subject to a $25,000 retention for each claim, up to a $1,000,000 limit of liability.  (*Id.* ¶ 8.)

In February 2011, after El Gallo Giro submitted its insurance application, El Gallo Giro's human resources manager and chief financial officer received notice of an internal oral harassment complaint from employee Lisandra Valverde.  (Mot. Partial Summ. J. 4.)  Valverde alleged that her supervisor, Raul Sanchez, sexually harassed her.  (Opp'n Partial Summ. J. 3.)  El Gallo Giro conducted an internal investigation of these allegations through MBA Associates, its third party human resources administrator, but could not verify Valverde's claims.  (Mot. Partial Summ. J. 4.)  When MBA Associates interviewed Valverde during this investigation, El Gallo Giro's human resources manager was present to hear the nature of Valverde's allegations.  (Sarris Decl. Ex. E ¶ 8.)

/ / /

1    On April 27, 2011, El Gallo Giro received a written demand from Valverde that
2    alleged damages resulting from workplace sexual harassment, battery, and retaliation.
3    (FAC ¶ 10.)  This was the first time the corporation had received a written demand for
4    damages concerning the Valverde claim.  (*Id.*)  El Gallo Giro timely submitted the
5    claim to Houston Casualty; but Houston Casualty, "by and through" PIA, denied
6    coverage under the policy.  (*Id.* ¶ 12.)
7    On June 21, 2011, Valverde filed suit against El Gallo Giro in Los Angeles
8    County Superior Court.  (*Id.* ¶ 13.)  The Valverde suit included not only the
9    allegations in her written demand, but also additional causes of action for termination
10   and retaliation resulting from El Gallo Giro's alleged wrongful conduct in June 2011.
11   (*Id.*)  El Gallo Giro also timely tendered the Valverde suit to Houston Casualty,
12   including Valverde's proposed pre-trial settlement demand.  (*Id.* ¶¶ 15, 28.)  Again,
13   Houston Casualty, via PIA, denied coverage.  (*Id.* ¶¶ 15, 29.)  As a result, Houston
14   Casualty did not defend or indemnify El Gallo Giro in the Valverde suit.  (*Id.* ¶¶ 16–
15   17.)  This refusal to defend or indemnify continues today.  (*Id.* ¶ 16.)

16                              **II.   LEGAL STANDARD**

17   Summary judgment should be granted if there are no genuine issues of material
18   fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.
19   P. 56(c).  The moving party bears the initial burden of establishing the absence of a
20   genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
21   Once the moving party has met its burden, the nonmoving party must go beyond the
22   pleadings and identify specific facts through admissible evidence that show a genuine
23   issue for trial.  *Id.*; Fed. R. Civ. P. 56(c).  Conclusory or speculative testimony in
24   affidavits and moving papers is insufficient to raise genuine issues of fact and defeat
25   summary judgment.  *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th
26   Cir. 1979).

27   A genuine issue of material fact must be more than a scintilla of evidence, or
28   evidence that is merely colorable or not significantly probative.  *Addisu v. Fred*

1   *Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).  A disputed fact is "material" where the

2   resolution of that fact might affect the outcome of the suit under the governing law.

3   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).  An issue is "genuine" if

4   the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving

5   party.  *Id.*  Where the moving and nonmoving parties' versions of events differ, courts

6   are required to view the facts and draw reasonable inferences in the light most

7   favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

8   ### III.    DISCUSSION

9          El Gallo Giro's FAC asserts five causes of action:  (1) breach of contract (duty

10   to defend) against Houston Casualty; (2) breach of contract (duty to indemnify)

11   against Houston Casualty; (3) declaratory judgment against Houston Casualty;

12   (4) tortious interference with contract against PIA; and (5) breach of the implied

13   covenant of good faith and fair dealing against both Houston Casualty and PIA.  (FAC

14   ¶¶ 19–46.)  Houston Casualty and PIA's converted motion for summary judgment

15   attacks all five causes of action, while El Gallo Giro's Motion for Partial Summary

16   Judgment concerns only the first cause of action on the duty to defend.  The Court

17   addresses each cause of action in turn.

18   **A.     Duty to defend and duty to indemnify**

19          The duty to defend in California is broad and requires that an insurer defend its

20   insured against claims for damages that are potentially covered by the issued

21   insurance policy.  *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir.

22   2010).  To determine the legal question of whether the duty to defend exists, the court

23   compares the policy's terms to the disputed claim.  *Montrose Chem. Corp. of Cal. v.*

24   *Superior Court*, 6 Cal. 4th 287, 295 (1993).  The court can also take into account

25   extrinsic facts that show the claim is potentially insurable.  *Id.*

26          For an insured to prevail on the duty to defend, it must first establish that the

27   claim may be covered by the policy.  *Montrose*, 6 Cal. 4th at 300.  To defeat this

28   assertion, the insurer must then conclusively prove that there is no potential for

1  coverage under the policy's terms.  *Id.*  Unless and until the insurer meets this burden,

2  it must defend its insured.  *Id.* at 299–300.

3          To determine whether the Valverde suit is eligible for coverage, thus

4  establishing Houston Casualty's duty to defend in the first instance, the Court looks to

5  the operative language in "SECTION I—Coverage" of the policy.  (FAC Ex. A at 37.)

6  Subsection (1)(c) of this section states that coverage is available only if:

> (1)     a "claim" because of an "insured event" is first made against any
> insured in accordance with the WHEN COVERAGE IS PROVIDED
> (SECTION VII) and COVERAGE TERRITORY (SECTION VIII)
> sections; and
>
> . . .
>
> (4)     the "insured event" does not arise from any potential "claim" or
> circumstances of which any "management or supervisory employee" had
> knowledge prior to the effective date of the first Employment Practices
> Liability Insurance policy issued by us to the insured and continuously
> renewed and maintained in effect to the inception date of this Policy.

15  (*Id.*)  This language makes clear that these two conditions to coverage must be met for

16  the policy to apply to any claim.

17          In its briefs, El Gallo Giro fails to show that it has satisfied the fourth condition

18  to coverage stated above.  Subsection (1)(c)(4) states that the "insured event" must not

19  be based upon "any potential 'claim' or circumstances of which any 'management or

20  supervisory employee' had knowledge prior to the effective date" of the policy.  (*Id.*)

21  El Gallo Giro argues that this prior knowledge provision applies only to potential

22  "claims," or potential "written demands for damages" as defined by the policy.

23  (Reply Partial Summ. J. 3.)  But this reading of subsection (1)(c)(4) conveniently

24  ignores the disjunctive "or."  The Court interprets the inclusion of the word "or" to

25  mean that either potential "claims" or "circumstances of which"—that the insured

26  knew of prior to the policy's effective date—can preclude coverage for a claim.

27          The circumstance that El Gallo Giro knew about prior to the effective date of

28  March 28, 2011, is Valverde's sexual harassment complaint.  Even though MBA

Associates's investigation found no basis for the Valverde claim, this does not erase the fact that El Gallo Giro was aware of the alleged sexual harassment.  In fact, El Gallo Giro's human resources manager heard Valverde's story firsthand because she was present when MBA Associates interviewed Valverde.  (Sarris Decl. Ex. E ¶ 8.) This undermines El Gallo Giro's "no" answer on its insurance application to this question:  "Are you aware of any facts, incidents, or circumstances, which may result in a claim against you?"  (FAC Ex. A at 28.)

And while "no" may have been the correct box to check on February 3, 2011, it was inappropriate once El Gallo Giro learned of Valverde's sexual harassment complaint on February 13, 2011.  (Sarris Decl. Ex. E ¶ 8.)  The insurance application required El Gallo Giro to give notice of such an event:

> The Applicant further represents that if the information supplied on this application changes between the date of the Application and the inception date of the policy period, the Applicant will immediately notify the insurer of such change."

(FAC Ex. A at 31.)

El Gallo Giro argues that because the Valverde complaint was unsubstantiated, it did not believe that there would be a "written claim for damages" in the future. (Mot. Partial Summ. J. 4.)  And so, El Gallo Giro contends it was justified in not supplementing its insurance application or otherwise informing Houston Casualty of the Valverde complaint.  (Reply Partial Summ. J. 4.)

This position is tenuous because the insurance application does not exclude coverage of pre-application events based on whether a formal, written claim was filed. To the contrary, a written claim is not the only thing excluded—there is no coverage for "any potential 'claim' or circumstances of which any 'management or supervisory employee' had knowledge prior to the effective date of the . . . [i]nsurance policy." (FAC Ex. A at 37.)

The determinative factor in this analysis is the knowledge of "any potential 'claim' or circumstances of which."  El Gallo Giro's arguments instead focus on

1  whether an actual claim was or would be filed.  This knowledge-based interpretation

2  is apt and reconciles with the insurance application's vantage towards full disclosure:

3  "Are you aware of any facts, incidents, or circumstances, which may result in a claim

4  against you?"  (FAC Ex. A at 28.)

5         To be "aware" of a complaint is very different than believing the merits of a

6  complaint, or whether a complaint would materialize into an actual claim for damages.

7  To be "aware" is to "hav[e] or show[ ] realization, perception, or knowledge."

8  *Merriam-Webster's Collegiate Dictionary* 80 (10th ed. 2001).  To "believe," which is

9  what El Gallo Giro insists it did not do after investigating Valverde's complaint, is

10 defined as "to accept as true, genuine, or real."  *Id.* at 104.  And while it may be

11 entirely reasonable for El Gallo Giro to have not believed the merits of Valverde's

12 complaint, or to have believed that it would never materialize into a claim, El Gallo

13 Giro still had knowledge of the sexual harassment complaint itself.

14        So because El Gallo Giro had this knowledge; however frivolous it thought the

15 complaint was; it should have notified Houston Casualty.  Even frivolous allegations

16 have the potential to materialize into a lawsuit—and this one did.  But by failing to

17 notify Houston Casualty, El Gallo Giro misrepresented its position and did not fulfill

18 all conditions to coverage under the policy.

19        Thus, the Valverde complaint is not covered under the insurance policy and

20 Houston Casualty's duty to defend never arose.  *Scottsdale Ins. Co. v. MV Transp.*, 36

21 Cal. 4th 643, 657 (2005).  Houston Casualty cannot be penalized for denying coverage

22 here.  *Am. Int'l Specialty Lines Ins. Co. v. Cont'l Cas. Ins. Co.*, 142 Cal. App. 4th

23 1342, 1374 (2006) (holding that the insurer properly denied coverage because "known

24 prior wrongful act[s] . . . [are] circumstance[s] that can reasonably be expected to lead

25 to a claim").

26        And because the duty to indemnity turns on the same facts, the Court also finds

27 that Houston Casualty has no duty to indemnify El Gallo Giro for the Valverde

28 complaint.  Accordingly, the Court **GRANTS** Houston Casualty and PIA's Motion as

to El Gallo Giro's first and second causes of action for breach of contract (duty to defend and duty to indemnify) and **DENIES** El Gallo Giro's related Motion.

**B.      Declaratory judgment**

In its third cause of action, El Gallo Giro seeks a judicial declaration of the rights and obligations of the parties under the insurance policy.  Based on the discussion above, the Court hereby declares that Houston Casualty owes no obligation to defend or indemnify El Gallo Giro for the Valverde complaint.

**C.      Tortious interference with contract**

To satisfactorily allege tortious interference with a contract in California, a plaintiff must plead the following: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007).

Here, El Gallo Giro alleges that it only contracted with Houston Casualty, not PIA, to obtain the policy.  (FAC ¶ 37.)  And El Gallo Giro contends that PIA is a stranger that induced Houston Casualty to breach its duties under the policy.  (*Id.* ¶ 38.)   But given the discussion above, at least the fourth element is missing— Houston Casualty did not breach its contractual relationship with El Gallo Giro because Houston Casualty did not have a duty to defend or indemnify.  Thus, PIA cannot be liable for tortious interference.  Accordingly, the Court **GRANTS** Houston Casualty and PIA's Motion as to El Gallo Giro's fourth cause of action for tortious interference.

**D.      Breach of the implied covenant of good faith and fair dealing**

California law establishes that an insurer breaches the implied covenant of good faith and fair dealing when it withholds policy benefits from its insured without proper justification.  *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001).  El Gallo Giro asserts this final cause of action against both Houston Casualty and PIA.

As discussed above, the Court finds that Houston Casualty; and PIA as its agent; had no duty to defend or indemnify.  Thus, there can be no breach of the implied covenant of good faith and fair dealing where the denial of coverage was reasonable or justified.  *Id.*  Thus, the Court **GRANTS** Houston Casualty and PIA's Motion as to El Gallo Giro's fifth cause of action.

## IV.   CONCLUSION

For the above reasons, the Court **GRANTS** Houston Casualty and PIA's Motion for Summary Judgment and **DENIES** El Gallo Giro's Motion for Partial Summary Judgment.

**IT IS SO ORDERED.**

November 15, 2012

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**